# Exhibit A

STATE OF NORTH CAROLINA

COUNTY OF NEW HANOVER

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
__ CVS _____

MONICA SIMONE FENNELL,

      Plaintiff,

      v.

PORTUS TERMINALS LLC, SSA
ATLANTIC, LLC, SOUTHEAST
CRESCENT SHIPPING COMPANY,
MARINE TERMINALS
CORPORATION – EAST,
INTERNATIONAL
LONGSHOREMEN'S ASSOCIATION,
INTERNATIONAL
LONGSHOREMEN'S ASSOCIATION
LOCAL 1426, and FRED SPAIN, JR.,

      Defendants.

**COMPLAINT**
**(Jury Trial Demanded)**

**COMES NOW** Plaintiff Monica Simone Fennell, by and through undersigned counsel, and brings this action against Defendants Portus Terminals LLC ("Portus Terminals"); SSA Atlantic, LLC ("SSA Atlantic"); Southeast Crescent Shipping Company ("Southeast Crescent Shipping"); Marine Terminals Corporation – East ("Marine Terminals Corp."); International Longshoremen's Association ("ILA"); International Longshoreman's Association Local 1426 ("ILA Local 1426"); and Fred Spain, Jr. ("Spain"), (collectively, Defendants") and alleges as follows:

**NATURE OF ACTION**

1.     Defendant Spain abused his position of power as Ms. Fennell's direct supervisor in her position as a spot checker for Defendants Portus Terminals, SSA Atlantic, Southeast Crescent Shipping, and Marine Terminals Corp.[1] — all maritime logistics companies who port in Wilmington, New Hanover County, North Carolina.

2.     Throughout Ms. Fennell's time working aboard the various ships owned and operated by the Maritime Logistics Defendants, Defendant Spain continuously abused his position of authority over Ms. Fennell by requiring sexual favors of Ms. Fennell in exchange for job assignments on the ships owned and operated by the Maritime Logistics Defendants and for specific trainings that would qualify Ms. Fennell for higher-paying jobs.

3.     After Ms. Fennell's umpteenth rejection of Defendant Spain's highly inappropriate advances, Defendant Spain refused to assign Ms. Fennell to any more jobs, effectively terminating her from employment with the Maritime Logistics Companies.

4.     The open and continuous harassment, as well as the retaliation Ms. Fennell experienced, has caused her significant economic damages and severe emotional distress, including panic attacks, difficulty sleeping, nightmares, chest pains, anxiety, and humiliation.

5.     Ms. Fennell brings this action to seek damages under North Carolina common law claims for wrongful discharge in violation of North Carolina public policy; negligent ratification; negligent hiring, supervision, and retention; assault and battery; false

---

[1] These defendants are collectively referred to herein as the "Maritime Logistics Defendants."

imprisonment; intentional infliction of emotional distress; and negligent infliction of emotional distress.

## PARTIES

6.      **Plaintiff Monica Simone Fennell** ("Ms. Fennell") is a citizen and resident of New Hanover County, North Carolina.  Ms. Fennell is a devoted mother of three.  She was employed with the Maritime Logistics Defendants from August 12, 2021, until she was wrongfully terminated on May 30, 2022.  Ms. Fennell is and was, at all times relevant herein, a dues-paying member of Defendant ILA and Defendant ILA Local 1426.

7.      **Defendant Portus Terminals LLC** ("Portus Terminals") is a foreign limited liability company registered to conduct business within the State of North Carolina.  It may be served through its registered agent at its registered office and mailing address at 2810 Coliseum Centre Drive, Suite 120, Charlotte, North Carolina, 28217.

8.      **Defendant SSA Atlantic, LLC** ("SSA Atlantic") is a foreign limited liability company registered to conduct business within the State of North Carolina.  It may be served through its registered agent at its registered office and mailing address at 2626 Glenwood Avenue, Suite 550, Raleigh, North Carolina, 27608.

9.      **Defendant Southeast Crescent Shipping Company** ("Southeast Crescent Shipping") is foreign corporation registered to conduct business within the State of North Carolina.  It may be served through its registered agent at its registered office and mailing address at 160 Mine Lake Court, Raleigh, North Carolina, 27615.

10. **Defendant Marine Terminals Corporation – East** ("Marine Terminals Corp.") is a foreign corporation registered to conduct business within the State of North Carolina. It may be served through its registered agent at its registered office and mailing address at 2626 Glenwood Avenue, Suite 550, Raleigh, North Carolina, 27608.

11. Upon information and belief, each of the Maritime Logistics Defendants provide various forms of port and harbor operations and marine cargo handling.

12. Upon information and belief, each of the Maritime Logistics Defendants has an individual contract with Defendant ILA and/or Defendant ILA Local 1426.

13. **Defendant International Longshoremen's Association** ("ILA") is the largest union of maritime workers in North America, representing upwards of 85,000 longshoremen on the Atlantic and Gulf Coasts, Great Lakes, major U.S. rivers, Puerto Rico, Eastern Canada, and the Bahamas. It is located at 5000 West Side Avenue, North Bergen, New Jersey, 07047.

14. **Defendant International Longshoremen's Association Local 1426** ("ILA Local 1426") is the local chapter of Defendant ILA. It is located at 1305 South 5th Avenue, Wilmington, North Carolina, 28401.

15. Upon information and belief, Defendant ILA Local 1426 operates a "union hiring hall" in which Defendant ILA Local 1426 receives job assignments from the Maritime Logistics Defendants and, based on the requirements of each job assignment, assigns eligible union members to the job assignments.

16. **Defendant Fred Spain, Jr.** ("Spain") is a citizen and resident of New Hanover County, North Carolina. Defendant Spain was, at all times relevant, the business

4

agent and recording secretary for Defendant ILA Local 1426. Upon information and belief, Defendant Spain was the employee of Defendant ILA Local 1426 in charge of assigning jobs and overseeing the paychecks of the various members of Defendant ILA Local 1426.

## JURISDICTION, VENUE, AND CONDITIONS PRECEDENT

17.     This Court has subject matter jurisdiction over this action pursuant to N.C. Gen. Stat. §§ 7A-240 and 243.

18.     This Court has personal jurisdiction over the Maritime Logistics Defendants pursuant to N.C. Gen. Stat. § 1-75.4(1) because the Maritime Logistics Defendants are engaged in substantial activity within this State.

19.     This Court has personal jurisdiction over Defendant ILA pursuant to N.C. Gen. Stat. § 1-75.4(1) because it is engaged in substantial activity within this State.

20.     This Court has personal jurisdiction over Defendant ILA Local 1426 pursuant to N.C. Gen. Stat. § 1-75.4(1) because it is engaged in substantial activity within this State.

21.     This Court has personal jurisdiction over Defendant Spain pursuant to N.C. Gen. Stat. § 1-75.4(1) as he is domiciled within the State of North Carolina.

22.     Venue is proper in New Hanovoer County, North Carolina, as the events giving rise to this action occurred in New Hanover County.

23.     This lawsuit was filed within all applicable statutes of limitation and repose.

## FACTS

24.     On or about August 12, 2021, Ms. Fennell began working as a spot checker for the Maritime Logistics Defendants; she continued in this position until she was effectively terminated on May 30, 2022.

25.     On or about August 12, 2021, Ms. Fennell became a member of Defendant ILA Local 1426, which is the Wilmington, North Carolina, branch of Defendant ILA. At the time of this complaint, Ms. Fennell is still a member of Defendant ILA Local 1426.

26.     In her position as a spot checker, she was required to work closely with Defendant Spain.

27.     Defendant Spain, in his position as the business agent and recording secretary for Defendant ILA Local 1426, managed the schedules of the spot checkers and oversaw the distribution of their paychecks.

28.     Spot checkers would gather at the "ILA Hall" each morning and listen as Defendant Spain called out which spot checker was assigned to work at which ship on which day.

29.     Mere months after Ms. Fennell started in her position, Defendant Spain began to sexually harass her.

30.     On separate occasions when Ms. Fennell was in Defendant's Spain's office to discuss her schedule or pick up her paychecks, Defendant Spain physically put his hands on Ms. Fennell; pushed Ms. Fennell against the wall and forcibly touched her private parts; groped Ms. Fennell; demanded Ms. Fennell to "let me see that pussy" and "let me see a

titty or something"; and lewdly told Ms. Fennell, "I bet that pussy phat . . . because I know it's good-good."

31.     On one particularly disturbing occasion when Ms. Fennell was in Defendant Spain's office, Defendant Spain emerged from behind his desk, holding his exposed penis in his hand.  He ejaculated into his hand and onto the floor, and then he told Ms. Fennell to hand him some tissues.

32.     After each encounter, Ms. Fennell made it clear that she was not interested in Defendant Spain's overt sexual advances and that he was making her feel extremely uncomfortable.

33.     When Ms. Fennell finally gathered the courage to confront Defendant Spain about his conduct towards her, Defendant Spain made his threats crystal clear.   He explained to her, "If you do right by me, I'll do right by you."  By this, Defendant Spain meant that if Ms. Fennell acquiesced to his sexual demands, he would schedule her for jobs five days a week and make sure she had her preferred job assignments — a spot checker's dream come true.

34.     If, however, Ms. Fennell did not do as Defendant Spain demanded, he vowed to make it hard for Ms. Fennell to get any jobs.  Defendant Spain later explained that, "I'm the boss, and I do what I want and get what I want."

35.     In early 2022, after Ms. Fennell's repeated refusals to succumb to Defendant Spain's threats, Defendant Spain began to make good on his earlier threats by deliberating giving her lower-paying jobs.

7

36.     Defendant Spain also refused to allow Ms. Fennell to participate in various training opportunities that would make her eligible for higher-paying jobs even though he made these trainings accessible to Ms. Fennell's male counterparts who were equally qualified — and, in some cases, less qualified or completely ineligible — for the trainings.

37.     Defendant Spain also began to verbally demean Ms. Fennell, telling her that being a spot checker is "not a woman's job" and that women belong at home, and, on this basis, he intended to block her from getting any more job assignments.

38.     Ultimately, that is exactly what Defendant Spain did. After May 30, 2022, he refused to schedule Ms. Fennell for any jobs at all.

39.     Around the same time, Defendant Spain also began, without prompting, to call and text Ms. Fennell after work hours. He repeatedly tried to get Ms. Fennell to go on a date with him.

40.     The harassment was so distressing and so frequent that Ms. Fennell was forced to change her phone number multiple times.

41.     Unfortunately for Ms. Fennell, there was no reasonable reporting mechanism for an employee in Ms. Fennell's position because Defendant Spain was her direct supervisor and the person to whom she was supposed to direct all complaints, grievances, or other HR matters.

42.     Finally, on September 30, 2022, Defendant Spain called Ms. Fennell into his office to receive a union-related payment. When she went in, she was again sexually harassed.

43.     Ms. Fennell never returned.

44.     On October 26, 2022, Ms. Fennell submitted an ILA 1426 Grievance Form to Gregory Washington, the president of Defendant ILA 1426, outlining her concerns regarding the ongoing incidents, which spanned December 29, 2021, to September 30, 2022, and the impact Defendant Spain's treatment had on her mental health.

45.     As a result of her sexual harassment and termination, Ms. Fennell has lost significant wages

46.     Ms. Fennell has lost significant wages due to her harassment and effective termination.  When she first began her position, she earned $64.20 an hour, generally worked 40 hours per week at that rate, and also had 20–25 hours of overtime per week at double time ($128.40 per hour).

47.     During her employment, Ms. Fennell also lost a lot of shifts because she refused to sleep with Mr. Spain and because she was fearful of even being around him.

48.     Ms. Fennell's months-long mistreatment by Defendant Spain also resulted in her severe emotional distress, which has had serious physical manifestations, including stress, anxiety, panic attacks, chest pains, difficulty sleeping, and nightmares.

## COUNT I
### WRONGFUL DISCHARGE IN VIOLATION OF
### NORTH CAROLINA PUBLIC POLICY
### (Against the Maritime Logistics Defendants
### and Defendant ILA Local 1426)

49.     The allegations of paragraphs 1 through 48 are realleged and incorporated by reference as if fully set forth herein.

9

50.     Defendant Spain repeatedly made unwanted sexual advances towards Ms. Fennell and told her to comply with his demands or lose her job.

51.     Defendant Spain's conduct described herein was based on sex.

52.     North Carolina has expressed a public policy interest against discrimination in the terms and conditions of employment based on sex as codified in the North Carolina Equal Employment Practices Act ("NCEEPA"), N.C. Gen. Stat. § 143-422.2.

53.     The Maritime Logistics Defendants and Defendant ILA Local 1426 violated North Carolina's public policy against discrimination of employees based on sex when Defendant Spain — the business agent and secretary of Defendant ILA Local 1426 — conditioned Ms. Fennell's continued employment with the Maritime Logistics Defendants and Defendant ILA Local 1426 on her agreement to perform sexual acts with him.

54.     The Maritime Logistics Defendants and Defendant ILA Local 1426, through the acts and omissions of Defendant Spain, effectively fired Ms. Fennell when and because she refused to perform sexual acts with Defendant Spain.

55.     This was done in direct violation of the NCEEPA, which states that the State of North Carolina will "protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees."

56.     Ms. Fennell's termination by the Maritime Logistics Defendants and Defendant ILA Local 1426 because she refused sexual relations with her supervisor,

Defendant Spain, is in violation of North Carolina's public policy to protect and safeguard the employments rights of persons because of their sex.

57.     Ms. Fennell seeks and is entitled to actual and compensatory damages for the severe mental and emotional distress that she experienced during and because of her employment in an amount to be determined by a jury but in any event in excess of Twenty-Five Thousand Dollars ($25,000.00).

**COUNT II**
**NEGLIGENCE — RATIFICATION**
**(Against Defendant ILA Local 1426 and Defendant ILA)**

58.     The allegations of paragraphs 1 through 57 are realleged and incorporated by reference as if fully set forth herein.

59.     An employer who ratifies the tortious conduct of its employees, even by omission to act, is liable for such conduct.

60.     Defendant ILA Local 1426 is and was, at all times relevant herein, Defendant Spain's employer.

61.     Defendant ILA Local 1426 acted negligently in failing to take reasonable corrective measures after it was aware of Defendant Spain's sexual harassment of both Ms. Fennell and also other female employees whom he had targeted prior to Ms. Fennell's employment.

62.     Defendant ILA Local 1426's failures to address Defendant Spain's misconduct constitute ratification of such conduct.

63.     Defendant ILA Local 1426 was further made aware of Defendant Spain's sexual harassment that resulted in Ms. Fennell's termination when, following her wrongful discharged, Ms. Fennell reported the misconduct to ILA Local 1426 President Gregory Washington.

64.     The failure to reinstate Ms. Fennell or otherwise address her improper termination constitutes ratification of Defendant Spain's decision to terminate Ms. Fennell.

65.     Ms. Fennell seeks and is entitled to actual and compensatory damages for the severe mental and emotional distress that she experienced during and because of her employment in an amount to be determined by a jury but in any event in excess of Twenty-Five Thousand Dollars ($25,000.00).

## COUNT III
## NEGLIGENT HIRING, SUPERVISION, AND RETENTION
### (Against Defendant ILA Local 1426)

66.     The allegations of paragraphs 1 through 65 are realleged and incorporated by reference as if fully set forth herein.

67.     Defendant ILA Local 1426 owed a legal duty of reasonable care to Ms. Fennell and other employees at Defendant ILA Local 1426 including the duty to provide Ms. Fennell with a safe place to work, free from sexually predatory and assaultive behaviors of its employees.

68.     Defendant ILA Local 1426 also owed a duty to Ms. Fennell not to hire or retain an employee — such as Defendant Spain — that it knew or should have known had

a propensity to coerce other employees into sexual acts using his authority as their direct supervisor.

69.     Defendant ILA Local 1426 is liable for the tortious acts of its an employee that it knew or should have known was unfit or incompetent.

70.     Defendant Spain was both an unfit and incompetent employee of Defendant ILA Local 1426, which Defendant ILA Local 1426 knew or should have known when it chose to hire and/or retain him.

71.     Defendant ILA Local 1426 further owed a duty to properly supervise its employees, including Defendant Spain, by, *inter alia*, ensuring that supervisors cannot isolate an employee under his supervision and sexually harass her; intervening when it had knowledge that its employee was abusing his power to sexually harass his inferiors; and providing employees with information about how to identify and report inappropriate sexual harassment at work.

72.     Defendant ILA Local 1426 breached its duty when it did not exercise reasonable care in the hiring, supervision, and retention of its employee, Defendant Spain.

73.     Defendant ILA Local 1426 was negligent in failing to adequately hire, supervisor, and/or retain Defendant Spain, an unfit and/or incompetent employee whom it knew or should have known had a propensity for such sexual harassment and assaultive acts against others.

74.     Ms. Fennell would not have been subjected to demands for sexual acts but for the negligence of Defendant ILA Local 1426 in hiring and retaining Defendant Spain and/or for Defendant ILA Local 1426's failure to properly supervise Defendant Spain.

75.     As a result, any tortious acts that were committed by Defendant Spain against Ms. Fennell in the workplace — and Ms. Fennell's resultant injuries thereto — were the proximate and foreseeable result of such negligent hiring, supervision, and retention of Defendant Spain.

76.     Defendant ILA Local 1426's negligence in failing to properly hire, supervise, and/or retain Defendant Spain did, in fact, cause injury to Ms. Fennell.  Defendant ILA Local 1426 is, thus, liable for Defendant Spain's conduct and Ms. Fennell's injuries that resulted from his sexual assault and harassment.

77.     As a direct and proximate result of Defendant ILA Local 1426's breach od due care, Defendant Spain sexually harassed Ms. Fennell, causing her physical injury and severe emotional distress, including, but not limited to, anxiety, fear, humiliation, embarrassment, depression, low self-esteem, and loss of enjoyment of life.

78.     Ms. Fennell's injuries, both physical and severe emotional distress, were the reasonably foreseeable result of Defendant ILA Local 1426's breach of its duty of reasonable care to Ms. Fennell.

79.     Ms. Fennell seeks and is entitled to actual and compensatory damages for the severe mental and emotional distress that she experienced during and because of her employment in an amount to be determined by the jury but in any event in excess of Twenty-Five Thousand Dollars ($25,000.00).

80.     The allegations of paragraphs 1 through 79 are realleged and incorporated by reference as if fully set forth herein.

81.     Defendant Spain has individually committed the torts of assault and battery upon Ms. Fennell.

82.     As described herein, Defendant Spain showed the intent to cause apprehension of an imminent offensive or harmful contact when he cornered Ms. Fennell — alone and isolated — in his office with the intent to force her to perform sexual acts with or for him.

83.     Defendant Spain, while he was acting as her supervisor, also committed to unwanted and non-consensual touching of Ms. Fennell when he put his hands on Ms. Fennell without her consent and pushed Ms. Fennell against the wall and touched her private parts without her consent.

84.     Defendant Spain knew or should have known that, while he was acting as Ms. Fennell's supervisor and threatening Ms. Fennell with job termination, Ms. Fennell could not and did not meaningfully consent to sexual acts with him.

85.     As a direct and proximate result of this apprehension of unwanted physical contact by Defendant Spain, Ms. Fennell has suffered and continues to suffer severe emotional distress, including, but not limited to, anxiety, depression, humiliation, embarrassment, low self-esteem, and loss of enjoyment of life.

86.     Ms. Fennell seeks and is entitled to actual and compensatory damages against Defendant Spain for the severe physical, mental, and emotional distress that she experienced during and because of Defendant Spain's conduct in an amount to be determined by a jury but in any event in excess of Twenty-Five Thousand Dollars ($25,000.00).

## COUNT V
## FALSE IMPRISONMENT
### (Against Defendant Spain)

87.     The allegations of paragraphs 1 through 86 are realleged and incorporated by reference as if fully set forth herein.

88.     Defendant Spain has individually committed the tort of false imprisonment against Ms. Fennell.

89.     As described herein, Defendant Spain used actual force to intentionally and unlawfully detain Ms. Fennell against her will when he pushed her against a wall against her consent.

90.     As a direct and proximate result of this intentional and unlawful detention of Ms. Fennell, Ms. Fennell has suffered and continues to suffer severe emotional distress, including, but not limited to, anxiety, depression, humiliation, embarrassment, low self-esteem, and loss of enjoyment of life.

91.     Ms. Fennell seeks and is entitled to actual and compensatory damages against Defendant Spain for the severe physical, mental, and emotional distress that she experienced during and because of Defendant Spain's conduct in an amount to be

determined by a jury but in any event in excess of Twenty-Five Thousand Dollars ($25,000.00).

**COUNT VI**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(Against Defendant Spain)**

92.     The allegations of paragraphs 1 through 91 are realleged and incorporated by reference as if fully set forth herein.

93.     Defendant Spain's conduct described herein was extreme, outrageous, and exceeded the bounds of civil society.

94.     Defendant Spain acted intentionally and/or with reckless indifference to the likelihood that his conduct would cause Ms. Fennell to suffer severe emotional distress.

95.     The intentional and/or recklessly indifferent actions of Defendant Spain did, in fact, cause Ms. Fennell to suffer severe emotional distress, including anxiety, panic attacks, difficulty sleeping, humiliation, and loss of enjoyment of life.

96.     Ms. Fennell seeks and is entitled to actual and compensatory damages for the severe mental and emotional distress she experienced as a result of Defendant Spain's acts and omissions in an amount to be determined by a jury but in any event in excess of Twenty-Five Thousand Dollars ($25,000.00).

**COUNT VII**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**(Against Maritime Logistics Defendants, Defendant ILA,**
**And Defendant ILA Local 1426)**

97.     The allegations of paragraphs 1 through 96 are realleged and incorporated by reference as if fully set forth herein.

17

98.     Defendant ILA Local 1426 have negligently inflicted upon Ms. Fennell emotional distress.

99.     As described *supra*, Defendant ILA Local 1426 owed Ms. Fennell a duty of reasonable care when she was employed with Defendant ILA Local 1426, including to provide her with a safe working environment free from harassment.

100.     Defendant ILA Local 1426 breached that duty when it did not exercise reasonable care in hiring, supervising, and retaining Defendant Spain, resulting in the foreseeable misconduct of its employee.

101.     Ms. Fennell's injury — severe physical and emotional distress — was the reasonably foreseeable result of Defendant ILA Local 1426's breach of its duty of reasonable care to Ms. Fennell.

102.     Defendant ILA Local 1426's negligence did, in fact, cause Ms. Fennell to suffer severe physical injury and severe emotional distress, including anxiety, fear, humiliation, embarrassment, depression, low self-esteem, and loss of enjoyment of life.

103.     Ms. Fennell's severe emotional distress was the actual and proximate result of Defendant ILA Local 1426's actions and inactions, and the consequences proximately caused by them.

104.     Ms. Fennell seeks and is entitled to actual and compensatory damages for the severe mental and emotional distress that she experienced during and because of her employment with Defendant ILA Local 1426, in an amount to be determined by a jury but in any event in excess of Twenty Five Thousand Dollars ($25,000.00).

**COUNT VIII**
**PUNITIVE DAMAGES**
**(Against Defendant ILA Local 1426 and Defendant Spain)**

105.  The allegations of paragraphs 1 through 104 are realleged and incorporated by reference as if fully set forth herein.

106.  The above-described conduct of Defendant ILA Local 1426 and Defendant Spain constituted willful and wanton conduct in reckless disregard of Ms. Fennell's rights and was without provocation, legal justification, or any excuse.

107.  Defendant Spain abused his power as Ms. Fennell's supervisor and sexually harassed Ms. Fennell and threatened her job if she did not comply with his demands.

108.  Defendant ILA Local 1426 participated in the misconduct described above, which was directly perpetrated by its business agent and secretary — Defendant Spain.

109.  The aforementioned willful and wanton conduct of Defendant ILA Local 1426 and Defendant Spain was designed to injury Ms. Fennell and did, in fact, injure her.

110.  Punitive damages should be awarded against Defendant ILA Local 1426 and Defendant Spain to punish said Defendants and to deter other potential defendants from the same or substantially similar intentional and reckless conduct.

111.  Ms. Fennell seeks and is entitled to punitive damages in the full amount allowed under the law.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays this Court for relief as follows:

a.    That judgment be entered in favor of Plaintiff for actual damages in an amount to be determined by a jury but, in any event, in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00);

b.    That judgment be entered in favor of Plaintiff for punitive damages in an amount to be determined by a jury;

c.    That judgment against Defendant bear interest as provided by law;

d.    That Plaintiff be granted a trial by jury of all issues so triable herein;

e.    That Plaintiff recovers the costs of this action and that these costs be taxed against Defendant, including pre-judgment interest as of the date of the filing of this complaint and any post-judgment interest;

f.    That Plaintiff's attorneys' fees be taxed against Defendant; and

g.    For any such Oher relief as this Court deems just and proper.

## JURY DEMAND

**Plaintiff demands a trial by jury on all issues so triable herein.**

This the 30 day of May, 2025.

**EDWARDS BEIGHTOL, LLC**

/s/ *Alison E. Smith*
Catharine E. Edwards
N.C. State Bar No. 52705
Alison E. Smith
N.C. State Bar No. 61856
P.O. Box 6759
Raleigh, NC 27628
Phone: 919.636.5100
cee@eblaw.com

aes@eblaw.com

*Attorneys for Plaintiff*