IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:25-CV-1294-BO-RN

| | | |
|---|---|---|
| MONICA SIMONE FENNELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| PORTUS TERMINALS LLC, SSA | ) | |
| ATLANTIC, LLC, SOUTHEAST | ) | |
| CRESCENT SHIPPING COMPANY, | ) | |
| MARINE TERMINALS | ) | |
| CORPORATION – EAST, | ) | |
| INTERNATIONAL LONGSHOREMEN'S | ) | |
| ASSOCIATION, INTERNATIONAL | ) | |
| LONGSHOREMEN'S ASSOCIATION | ) | |
| LOCAL 1426, and FRED SPAIN, JR., | ) | |
| | ) | |
| Defendants. | ) | |

This cause comes before the Court on six motions to dismiss filed by the defendants. Plaintiff has responded, defendants have replied, and a hearing on the motions was held before the undersigned on November 6, 2025, at Raleigh, North Carolina. In this posture, all motions are ripe for disposition.

BACKGROUND

Plaintiff initiated this action by filing a complaint in New Hanover County, North Carolina Superior Court. [DE 1-3]. Defendant International Longshoremen's Association removed the case to this Court on the basis of its federal question jurisdiction, specifically federal labor laws. Following removal, each of the defendants, with the exception of defendant Spain, appeared and filed a motion to dismiss for failure to state a claim upon which relief can be granted. Plaintiff has voluntarily dismissed defendant Spain, leaving defendants Portus Terminals, SSA Atlantic,

Southeast Crescent Shipping Company ("Southeast Crescent"), Marine Terminals Corporation – East ("MTC—East"), International Longshoremen's Association ("International"), and International Longshoremen's Association Local 1426 ("Local 1426").

In her complaint, plaintiff alleges claims for wrongful discharge in violation of public policy against all remaining defendants; negligence – ratification against Local 1426 and International; negligent hiring, supervision, and retention against Local 1426; negligent infliction of emotional distress against all remaining defendants; and punitive damages against Local 1426. In light of Spain's dismissal, plaintiff's claims for assault and battery, false imprisonment, and intentional infliction of emotional distress, which have been alleged solely against Spain, are dismissed.

Plaintiff's claims are based on the following allegations. In August 2021, plaintiff became a member of Local 1426 in Wilmington, North Carolina and began working as a spot checker. Spain was the business agent and recording secretary for Local 1426 and managed the schedules and assignments of the spot checkers, including plaintiff, as well as distribution of their paychecks. Each morning, spot checkers would gather in the union hall where Spain assigned spot checkers to work on particular ships. Within a few months of starting her position as a spot checker, Spain began to sexually harass plaintiff. The harassment included forcible physical touching and lewd and offensive conduct and comments. Plaintiff attempted to rebuff Spain without success. When she finally confronted Spain, he issued plaintiff an ultimatum, suggesting that, if she acquiesced to his sexual demands, he would make sure she was scheduled five days per week at her preferred job assignments, but if plaintiff did not acquiesce to his demands, Spain would prevent plaintiff from getting jobs. After plaintiff refused to agree to his sexual demands, Spain began giving plaintiff lower-paying jobs and refusing to allow her to participate in training activities. Spain also

2

told plaintiff that women belong at home and that being a spot checker is not a job for women. After May 30, 2022, Spain refused to schedule plaintiff for any jobs.

As Spain was plaintiff's direct supervisor, plaintiff alleges that there existed no reasonable process for reporting her complaints regarding Spain. On September 30, 2022, plaintiff went to Spain's office to collect a union-related payment and was again sexually harassed. Plaintiff never returned to work. On October 26, 2022, plaintiff submitted a Local 1426 grievance form to the president of the Local 1426, Gregory Washington outlining her treatment by Spain. As to the non-union defendants, Portus Terminals, SSA Atlantic, Crescent Shipping, and MTC – East, plaintiff alleges that these "Maritime Logistics Defendants" provide various forms of port and harbor operations as well as marine cargo handling, and that they each have an individual contract with International or Local 1426. [DE 1-3] at 5.[1]

## DISCUSSION

A 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the complaint's legal and factual sufficiency. *See* Fed. R. Civ. P. 12(b)(6). The focus is on the pleading requirements under the Federal Rules, not the proof needed to succeed on a claim. "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). This standard does not require detailed factual allegations, *id.*, but it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

---

[1] Page number citations to documents filed on the Court's electronic filing system refer to the page number generated by CM/ECF unless otherwise indicated.

3

is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). For a claim to be plausible, its factual content must permit the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A. *Motions to dismiss by the Maritime Logistics Defendants* [DE 32]; [DE 34]; [DE 39]; [DE 41]

Plaintiff has alleged two claims for relief against each of the Maritime Logistics Defendants: wrongful discharge in violation of North Carolina public policy as expressed in the North Carolina Equal Employment Practices Act ("NCEEPA"), N.C. Gen. Stat. § 143-422.2, and negligent infliction of emotional distress. In their motions to dismiss, all of the Martime Logistics Defendants argue that North Carolina courts have not adopted the tort of constructive discharge in violation of public policy and that plaintiff has pled no facts which would support a claim for negligent infliction of emotional distress against any of them. Defendants MTC – East, SSA Atlantic, and Portus Terminals also argue that plaintiff's state law claims are preempted by federal labor law, specifically Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185.

The NCEEPA provides that "[i]t is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgment on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees." N.C. Gen. Stat. § 143-422.2(a). NCEEPA itself does not support a private right of action, *see McLean v. Patten Communities, Inc.*, 332 F.3d 714, 719 (4th Cir. 2003) ("absent a clear indication from the North Carolina courts or legislature it would be inappropriate for a federal court to create a private right of action under § 143-422.2" (cleaned up, citation omitted)), but a plaintiff may bring a common law wrongful discharge claim for violation of NCEEPA. *Id.* at 720-21.

4

However, courts have consistently held that constructive discharge cannot form the basis of a common law wrongful discharge claim based upon NCEEPA. *See, e.g., Jones v. Duke Energy Corp.*, 43 F. App'x 599, 600 (4th Cir. 2002) ("North Carolina courts and federal courts applying North Carolina law have [found] repeatedly that no private cause of action exists for . . . constructive discharge in violation of public policy"); *Williams v. Target Corp.*, No. 3:10CV136-RJC-DSC, 2010 WL 2650847, at *3 (W.D.N.C. Apr. 22, 2010) (listing cases), *report and recommendation adopted,* No. 3:10CV136-RJC-DSC, 2010 WL 2650845 (W.D.N.C. July 1, 2010). In opposition to the motion to dismiss, plaintiff argues that she has alleged her employment was terminated, not that she was constructively discharged. The Court disagrees. Plaintiff's complaint alleges that Spain stopped assigning her to jobs when plaintiff refused his sexual advances and that she stopped going to work. Plaintiff fails to allege that she was told by Spain or any employee of Local 1426, International, or any of the Maritime Logistics Defendants to stop coming to work, that her employment had ended or been terminated, or that she was no longer employed. Rather, plaintiff has plainly alleged that she was constructively discharged. *See Baldwin v. Tradesmen Int'l, Inc.*, No. 5:12-CV-00116-FL, 2013 WL 1192314, at *8 (E.D.N.C. Mar. 22, 2013) (plaintiff alleges constructive discharge where she alleges she was not assigned any further projects after complaining to supervisor about sexual harassment); *see also Doyle v. Asheville Orthopaedic Assocs., P.A.*, 148 N.C. App. 173, 177 (2001) (constructive discharge established by showing that employer deliberately made a plaintiff's working conditions so intolerable she was forced to quit). Plaintiff's wrongful termination claim based on her alleged constructive discharge is therefore dismissed.

Plaintiff's negligent infliction of emotional distress ("NIED") claim against the Maritime Logistics Defendants is also dismissed. As these defendants argue, plaintiff's allegations of the

5

infliction of emotional distress fail to tie any conduct to the Maritime Logistics Defendants. The elements of a North Carolina NIED claim are "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress (often referred to as "mental anguish"), and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.*, 327 N.C. 283, 304 (1990). "An employer may be liable for an employee's tortious conduct under the theory of respondeat superior in three situations: (1) when the employee's act is expressly authorized by the employer; (2) when the employee's act is committed within the scope of his employment and in furtherance of the employer's business; or (3) when the employee's act is ratified by the employer." *Robinson v. Durham Pub. Sch. Bd. of Educ.*, No. 1:13CV652, 2014 U.S. Dist. LEXIS 109411, at *23-24 (M.D.N.C. Aug. 7, 2014).

Plaintiff alleges that defendant Local 1426 negligently inflicted emotional distress on plaintiff. [DE 1-3] at 19. Each of plaintiff's supporting paragraphs refer only to the actions of Local 1426. Plaintiff further alleges that Spain was an employee of Local 1426. *See* [DE 1-3] at 5-6; 12. None of plaintiff's allegations reference conduct by the Maritime Logistics Defendants regarding the negligent infliction of emotional distress. Moreover, plaintiff has not alleged any authorization or ratification of Spain's conduct by any of the Maritime Logistics Defendants. Plaintiff's NIED claim against these defendants is dismissed. Each of plaintiff's claims against the Maritime Logistics Defendants is therefore dismissed.

B. *Motion to dismiss by International* [DE 36]

International moves to dismiss plaintiff's claims against it, arguing first that plaintiff has made no factual allegations concerning conduct by International, and that International is not vicariously liable for the conduct of its affiliated local unions. The Court agrees.

6

Plaintiff alleges that International is the largest union of maritime workers in North America and that it represents more than 85,000 longshoremen. [DE 1-3] at 5. There are no additional allegations about International in plaintiff's complaint. Plaintiff then alleges claims against International for negligence – ratification and for negligent infliction of emotional distress.

As plaintiff agrees, international and local unions are treated as separate legal entities. *See United Elec., Radio & Mach. Workers of Am. (UE) v. N.L.R.B.*, 986 F.2d 70, 75 (4th Cir. 1993). But plaintiff contends that she has nonetheless raised a plausible inference that there is a coordinated structure between International and Local 1426 by alleging that plaintiff accessed employment through Local 1426 subject to the collective bargaining agreement negotiated or ratified by International. But no such allegations are made in plaintiff's complaint. *See* [DE 1-3]. Moreover, simply alleging a relationship between International and Local 1426 is not sufficient. Plaintiff must instead have alleged that an agency relationship between the two entities existed to hold International liable for any alleged tortious conduct by Local 1426. *See Carbon Fuel Co. v. United Mine Workers of Am.*, 444 U.S. 212, 217-18 (1979); *Alexander v. Loc. 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 409 (6th Cir. 1999); *Pyatt v. Int'l Longshoremen's Ass'n Loc. 1422*, No. 2:23-CV-05772-DCN, 2025 WL 1558587, at *6 (D.S.C. June 2, 2025). A plaintiff must plausibly allege that the international union "instigated, supported, ratified, or encouraged" the conduct of the local or "that what was done was done by their agents in accordance with their fundamental agreement of association." *Carbon Fuel Co.*, 444 U.S. at 217-18; *see also Berger v. Iron Workers Reinforced Rodmen Loc. 201*, 843 F.2d 1395, 1427 (D.C. Cir. 1988). Plaintiff has done neither here. Her claims against International are therefore dismissed.

7

*C. Motion to dismiss by Local 1426* [DE 50]

Local 1426 moves to dismiss plaintiff's claims against it by arguing first that her claims implicate the union's duty of fair representation under the National Labor Relations Act and are therefore preempted. The Court agrees.

The duty of fair representation requires labor organizations "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177 (1967). "The duty of fair representation, unlike state tort and contract law, is part of federal labor policy." *Breininger v. Sheet Metal Workers Int'l Ass'n Loc. Union No. 6*, 493 U.S. 67, 79 (1989). "When the union has abused its power, the duty of fair representation stands as a bulwark to prevent arbitrary union conduct. The importance of the federal interest is such that the duty of fair representation cause of action is governed exclusively by federal law even when the claim is filed in state court." *Peterson v. Air Line Pilots Ass'n, Int'l*, 759 F.2d 1161, 1169–70 (4th Cir. 1985) (cleaned up, citation omitted).

When a plaintiff's state law negligence claims are "embodied in the union's duty of fair representation," they are governed by federal law and preempted. *Chappell v. Int'l Bhd. Elec. Workers Loc. Union 772*, 120 F. Supp. 3d 492, 498 (D.S.C. 2015). Here, plaintiff claims, for example, that Local 1426 owed plaintiff a duty to provide her with a safe workplace free from sexually assaultive behavior, and further to properly supervise its employees, including Spain, ensuring that employees did not sexually harass inferiors. Although pled as a negligent hiring, supervision, and retention claim, this implicates Local 1426's duty of fair representation. *See, e.g., Rogers v. Hamilton*, No. CV 2:19-2807-RMG-MHC, 2020 WL 13740938, at *6 (D.S.C. Sept. 24, 2020) (dismissing state law claims, including negligence claims, arising from the sexual

8

harassment of a union member by her union representative as preempted by the duty of fair representation).

Though the Court would recharacterize plaintiff's negligence claims against Local 1426 as claims for breach of the duty of fair representation to permit her to proceed, to do so in this case would be futile because plaintiff's claims would be barred by the applicable statute of limitations. *See* 29 U.S.C. § 160(b); *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169-170 (1983). A claim for breach of the duty of fair representation accrues "when [the plaintiff] discovered his injury or should have discovered it through the exercise of reasonable diligence." *Smith v. Loc. 7898, United Steelworkers of Am.*, 834 F.2d 93, 95 (4th Cir. 1987). Here, plaintiff has alleged that she stopped being assigned jobs in May 2022 and that she stopped going to work in September 2022. This suit was filed in May 2025, well-outside the six-month statute of limitations.

Finally, as has already been addressed in reference to the other motions to dismiss, to the extent plaintiff's wrongful discharge in violation of North Carolina public policy claim is not preempted by federal labor law, the claim nonetheless fails because it is based on plaintiff's alleged constructive discharge. Local 1426's motion to dismiss all claims against it is therefore granted.

## CONCLUSION

Accordingly, for the foregoing reasons, the motions to dismiss filed by the remaining defendants, [DE 32]; [DE 34]; [DE 36]; [DE 39]; [DE 41]; [DE 50] are GRANTED. Plaintiff's complaint is DISMISSED. The clerk is DIRECTED to close the case.

SO ORDERED, this **26** day of February 2026.

*Terrence Boyle*

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

9